Good morning, everyone. Welcome. Judge Rovner is appearing with us by videoconference and counsel will see her at the podium in the small monitor. And with that, I will call our first case this morning. It is number 17-1061 Vasquez v. Foxx. Ms. Nicholas. Good morning. May it please the court. An Illinois law enacted in 2008 makes it a felony for people who have been convicted of certain offenses to reside within 500 feet of home daycare businesses. The law contains no grandfather provision for an existing or a pre-existing residence, meaning that a person can find himself in violation of this law, having done nothing other than remain in the home where he lives, solely because a third party has decided to obtain a license to operate a home daycare within 500 feet of his home. We're here today on appeal. Ms. Nicholas, rather, sorry. Can you bring us up to date on the current living situation of the plaintiffs? It appears that Mr. Vasquez renewed his lease. And I was wondering when does that term expire? And is Mr. Cardona still living with his mother? Both plaintiffs are still living in the homes where they resided at the time this case was filed in summer of 2016. Mr. Vasquez has renewed his lease for another year, along with his wife and his 10-year-old daughter, and so they are still living in the same apartment. Mr. Cardona continues to live in the family home where he has resided for over 25 years, of which he has been the owner since 2010. However, Mr. Cardona's mother has since passed away. However, this is still a family home, which Mr. Cardona is the owner of. Thank you. We're here today on appeal from the District Court's decision finding that plaintiffs had not stated a claim that this statute violates their constitutional rights. And we are asking this court to reverse the decision of the District Court with regard to all four of the constitutional theories advanced by the plaintiffs in their complaint, namely that the statute and its application to the plaintiffs violates the ex post facto clause, that it violates the 14th Amendment guarantee of procedural due process, that it violates substantive due process, and that it violates the Fifth Amendment. In the limited time I have today, I would like to focus my attention on the ex post facto claims and the claim under the procedural due process clause. Turning first to the procedural due process claim. It is plaintiff's claim... I think that's your weakest claim. I'm surprised that you're focusing on it. I'm assuming that the court is referring to the Connecticut v. Doe decision from 2003 in the Supreme Court. Right. Your argument is that there's no hearing at which the sex offender can prove lack of dangerousness, but that's not a criteria for application of the buffer zone requirement. So that's an immaterial fact. So there is no due process violation of a procedural type. Underlying the application of the residency restrictions to the plaintiffs in this case is an assumption that they present a current unacceptable danger to the community such that it's appropriate to make them move out of an existing residence that they've already established. Right. That's a categorical determination that's been made by the legislative branch. There is no judicial determination or other adjudicative determination that needs to be made in a case-specific way. It applies to every sex offender. Yes. The Illinois legislature has made a judgment that this same restriction should be applied very broadly to a very heterogeneous group of people that it has categorized under this category of child sex offender. But the reality is... Look, I'm in agreement with Judge Sykes. Why must there be an individualized hearing? Why would the legislature not be allowed to conclude that some former child sex offenders present enough of a risk that all child sex offenders should be kept away from children? It's an inappropriate nature with a minor and whom have lived in the community offense-free for over 10 years. Right, but that's really a claim about the substance of the statute, that it does not include a dangerousness assessment of an individualized nature. It's not a procedural due process claim. Well, the plaintiff's claim here is that underlying the application of this restriction to the plaintiffs is a determination that was not an issue in the underlying criminal proceeding, and that's the plaintiffs currently presented danger. And it's our contention that the plaintiffs ought to be afforded an opportunity to contest that. Right, that's a claim about the substance of the statute, because the statute does not provide for a requirement of dangerousness. Yes. So you're challenging the statute facially, and maybe you've got a good substantive due process claim, maybe you don't, but it's not a procedural due process claim. I think that you're quite right that the statute applies very broadly without any individualized determination, and that is a problem with the substance of the statute, in that it really isn't logically connected to its avowed non-punitive purposes here. Ms. Nichols, forgive me for interrupting, but I think you should argue what I believe to be the closest issue, and that is the ex post facto clause. Yes, thank you, Your Honor. I think we can see where that argument is going. Great, well I will turn my attention to that claim. The ex post facto clause, of course, prohibits the imposition of retroactive punishment, meaning a statute cannot retroactively increase the burdens that are imposed on someone for a crime that was committed before the date of the enactment. Well, that's a bit of an overstatement of the doctrine. It's not any burden, it's only punishment. Correct. And the Supreme Court has articulated a five-factor balancing test to guide the court in determining whether the burdens imposed under a statute are so severe that it ought to be Because the Sixth Circuit noted in its recent decision in Snyder v. Doe's, often the most important part of that test is what non-punitive purpose the statute is supposed to serve and whether the statute's burdens are excessive when viewed in relationship to that purpose. And here, we contend that the law is excessive in two primary ways. One, that it sweeps very broadly to people who have been living in the community without committing an offense for decades. Two, there is a lack of evidence that such restrictions on people's residency meaningfully advance public safety. Particularly under Illinois law, the restrictions have a very harsh effect, which is that people are subject to a lifetime of housing instability. This restriction is not tied to registration. So someone like Mr. Cardona, one of the plaintiffs in this case, who is only required to register for 10 years, will still be subject to the statute for the rest of his life. So he has already lived in the community for 11 years without being accused of committing another offense, and he could live in the community for another 30, 40, or 50 years and be notified at any time that he has to move out of a home he has established because of the act of a third party. The statute really does not require any showing of ill intent, of harm to anyone, or a present danger posed by Mr. Cardona or anyone else. Right, but this part of the ex post facto analysis doesn't require a close fit between the means chosen by the legislature to advance the child protective purpose of the statute and the end. You know, a reasonable legislative judgment, as long as it's not a sham for punishment, is sufficient. Yes. I think that the Supreme Court, in its recent Packingham decision, stated that although it's clear that sexual abuse of a child is a most serious crime and that a legislature may pass valid laws to protect children and other sexual assault victims, the assertion of a valid government interest cannot, in every context, be insulated from all constitutional protections. So the Supreme Court is calling for there to be fair judicial review of these types of legislative determinations, even when they are premised on some kind of legislative finding of fact that certain people present a danger and such that we should limit their rights, limit where they're allowed to live, and even kick them out of homes that they have already established. So I would submit... Ms. Nichols, what policy of the city causes harm to the plaintiffs? Let me explain. It seems that the only discretion the city exercises is to allow for 30 days before effecting an arrest. But is that not more generous than the statute? The statute appears to instantly criminalize residing within 500 feet of a daycare. How does notice and extra time harm the plaintiffs? That's an excellent question, and it really gets to the main arguments that are advanced by both of the defendants in this case, and that's that they're simply not the right parties here, that they have not engaged in the type of policymaking that ought to subject them to Monell liability. The principal cases they've relied on for that contention are Surplus Door v. City of Delphi and Bethesda-Lutheran v. Leanne. Both of those cases involved the propriety of damages awards. And in Bethesda-Lutheran, the court found that the plaintiffs had already obtained injunctive relief and found that that was perfectly appropriate. And underlying this court's decision in both of those cases is really a determination that simply implementing a state law is not the type of policymaking decision that ought to subject a municipality to liability for compensatory damages under Monell. This, in contrast, is an injunctive case. We are seeking injunctive relief, prospective equitable relief, from a threatened violation of our client's constitutional rights to their property and to their security in their homes. Who has violated your client's constitutional rights? So pursuant to the state legislation, the city police department has been authorized and empowered to enforce the law. Your challenge is to the statute. It's not to any executive action, specific executive action, enforcing the statute that's particular to your clients. This is a broad-spectrum constitutional challenge to the statutory scheme. Yes, I think you're right. And I have to say that my briefing fell short in this way. And I'd love an opportunity to submit a supplemental brief really explaining the proper basis for liability against the city and the state's attorney's office here. Really, there is a way... Would you concede... I'm sorry. You know there's a bit of a delay, and I'm terribly sorry about that. Would you concede that any claim for damages against the state's attorney is barred by the 11th Amendment? I think... Are you simply seeking declaratory and injunctive relief against the state's attorney? Yes, I really think that that is our claim here, which is that the city and the state's attorney should be seen as agents of the state. They have been empowered to act as agents of the state to enforce this law. If we had gone ahead and sued Bruce Rauner, Lisa Madigan, the director of the Illinois State Police, we have a problem with redressability, meaning that our clients received a notice from the city of Chicago, move within 30 days, or you're going to be arrested and charged. Who would do that arresting and who would do that charging? Chicago Police Department and the Cook County State's Attorney's Office. Not Lisa Madigan, not Bruce Rauner. And so if we sought injunctive relief from those high-level state officials who are not actually personally involved in enforcing the statute, we're not going to get any effective relief that can redress our clients' claims. So really, it was necessary for us to name the city and the state's attorney because that's who would prosecute the plaintiffs, that is who would charge them and arrest them and subject them to felony charges. And with the court's leave, I would, you know, love an opportunity to submit a brief very shortly setting that forth in writing because I think it is really underlying our claim against the city and the state's attorney is this agency question. And that might raise questions of 11th Amendment immunity. If the state's attorney and the city are seen as agents of the state, they may be immune from awards of compensatory damages. But not from injunctive relief, and that's quite clear in the case law. Returning to the ex post facto claim, the district court did not even reach any of the balancing factors that were set forth in Smith v. Doe or Kennedy v. Mendoza-Martinez because the court erroneously determined that the statute was not retroactive. But as applied to the plaintiff, it certainly is being applied retroactively. Mr. Vasquez's conviction occurred in 2001, Mr. Cardona's conviction occurred in 2002, and this is a 2008 enactment that is now being applied to the plaintiffs to force them to move out of their homes. And I see that I'm entering my rebuttal time, so I would just say in conclusion that we ask the court to reverse the decision of the district court and allow plaintiffs an opportunity to proceed on their constitutional claims. Thank you. Thank you. Thank you. Good morning. May it please the court. I will start with the substantive due process claim as that claim is the... is the claim that is solely made against the state's attorney, Fox. The plaintiff does not... Well, you know, on the ex post facto issue, it seems possible that a plaintiff can face additional punishment under this statute for literally doing nothing. Both plaintiffs, for example, are simply staying in homes that were in compliance when they took up residence. Their liability under the statute is created by the actions of third parties obtaining daycare licenses. Why do you think that would not violate the ex post facto clause? Judge Roldner, I think that question is answered by this court's decision in U.S. v. Leach. In Leach, this court said that the Sex Offender Registration Notification Act, the federal act, is...creates a new prospective legal obligations based on a person's prior history. And I think that that's exactly what we have here. That is, the conduct that would violate this statute is post the enactment of this statute and the only thing that relates back to their previous crime is what the element of placing them in the category of sex offender just as it would under SORNA in U.S. v. Leach. I'm not sure that the analogy is appropriate here. Leach involves the registration requirement, which is a prospective requirement. This retroactively makes an existing residence of a sex offender unlawful. So why isn't that retrospective in nature? And the real pressure point in the analysis is on the punitive question. So I think Judge Sykes, that it is similar to Leach. And I think if... I would also refer the court to Doe v. Smith, excuse me, Doe v. Miller, the 8th Circuit decision, that it is not retrospective because the conduct that violates the statute is post the amendment of the 2008... post the 2008 amendments to the statute. So it is maybe more analogous to being a felon in possession of a firearm. The coming into possession of a firearm is a new crime. And it is the only element that we need... that would, I suppose, predate the statute would be the fact that you were in the category of felons. And similarly here... Does the statute create liability when a neighbor simply obtains a daycare license? Or must that neighbor actually be running a daycare before the plaintiffs must move? Which is it? Your Honor, as I understand the Child Care Act, the Illinois Child Care Act, which defines day home cares, the day home care definition requires that there be three or more children that are not your children in the home. So I think based on the definition, the daycare would need to be operational, not just merely obtaining a license. And so I think based on... In these cases, were the daycares operational at the time that these men received notice? Your Honor, I think the record is unclear as to the daycare and Mr. Vasquez's situation. I believe in Mr. Cardona's situation, the daycare had actually been operational since 2014. And for whatever reason, that's unclear from the record. The police didn't get around to giving him the violation notice until 2016. So I... So I think, Your Honors, that going back to Judge Sykes' question, that the conduct that runs afoul of the statute runs afoul of it once... It is a new act based on the category that you are in, in this case, sex offender. Is that true of Mr. Cardona? I think that is true of both Mr. Cardona and Mr. Vasquez, because they are both in that category. And then once the statute is enacted, they would run afoul of it because they are in that category, similar to Leach, similar to Connecticut Department of Public Safety. It is... The category is what occurred prior to enactment, but the new liability, if you will, occurs post-enactment based on conduct post-enactment. The only thing that's prior to enactment is the category. And I think, you know, the case law is clear, and as the court said with respect to the procedural due process claim, categorization does not run afoul of the Constitution. If a person in Cardona's position is forced to sell his home at a loss in order to leave and be in compliance, is there any mechanism in state law that allows him to recover for that loss? I believe there is, Your Honor. I understand that in Callahan, the city... The court interpreted the city as conceding that there isn't, but I think, and my colleague may be better suited to address that, but as I read Illinois state law, there is... There are remedies, whether it be in the court of claims or in circuit court, for the situation that you've just articulated, Judge Rovner. And I do also want to be clear that Mr. Cardona is uniquely situated in that he purchased the home in 2010 post the 2008 enactments. So he purchased the home knowing that he was in the category of people that may very well be subject to liability in this... under this statutory scheme, and therefore, we would argue in the first instance that there is no taking, but if this court were to find that there is, we do believe under Illinois law, whether it's in the court of claims or in circuit court, that he would have a remedy. And that would be a reverse condemnation action? It's... It appears that the way Illinois case law reads is that the reverse condemnation actions are the type of actions that you would file in circuit court,  between physical takings, which appear to go to the court of claims, and then sort of damaging is what they use in Illinois state law. Damaging actions, which is I think what would be here, you would go to circuit court in some type of reverse... inverse condemnation action. And so I think with... those remedies available, if this court were to find it was a taking, and again, we say that there isn't, that for Mr. Cardona, because he bought after the statute, and for Mr. Vasquez, because he has a leasehold interest, and that leasehold interest has run. We understand that, you know, he renewed the lease pursuant to the injunction that is in place, but he has no protected property interest in renewing that particular lease in violation of state law. So I think that addresses the taking, and I think... I see my time is about to run out, so I will just address briefly the substantive due process claim, which is directed solely at the state's attorney, and we would simply argue to the court that there is a rational basis for this statute, and that it is rationally related to a legitimate government interest. I see my time has run out, so unless there are any additional questions from me, I will turn it over to my colleague. Thank you. Thank you. Ms. Layton. May it please the court. Counsel. Your Honors, the city... The plaintiffs here have sued the city on only three of the four claims, the ex post facto takings and procedural due process claim. The city, of course, did not enact the criminal statute at issue, and the CTD's role is to give a notice to child sex offenders that their residences violate the state law and then provide an opportunity for these child sex offenders to move before making an arrest. This morning, I'd like to... Ms. Layton, how many... How many licensed in-home daycares are there in the city of Chicago? Is there any place left in the city for a child sex offender to live? Your Honor, I'm not... I don't know. I can't answer that question of how many licensed daycare centers there are. To my knowledge, that was not in the... If it's alleged in the complaint, then the complaint would answer that, but I don't have that fact at my fingertips. I apologize. As I understand it, the city's role is to administer the registry, and that's the vehicle through which these notices are given? Correct, Your Honor. There's a separate state law that requires a sex offender to come in and register. In the process of doing that, then the address is run through the computer, and then that would give, you know, an indication that the address is in a location that is prohibited by the statute that we're here to discuss today. And if it is, that's when the CPD would hand the child sex offender who's there to register as the plaintiff's alleged in their complaint happened to both plaintiffs the notice that says, this address violates state law, this criminal statute, and you have 30 days if you want to be in compliance with the law to, you know, vacate the residence and find... So does the statute allow the police to inform a person that he is not in compliance and then arrest him immediately when he returns home? Because it certainly looks like it creates instant liability once a person obtains knowledge of noncompliance. I mean, I was wondering why not allow discovery on whether the city's 30-day policy meets the requirements of due process. Well, of course, Your Honor, the plaintiffs have not made that claim that the notice is insufficient. That is a procedural, you know, a challenge to the notice, the sufficiency of the notice they receive. That's not the allegation that they're directing against the city. They... The city... The claim against the city is simply to hold the city liable for the takings, the ex post facto, you know, the other substantive clauses. And Monell prohibits that because what we do is enforce state law. The statute is worded in a way that perhaps somebody could be in jeopardy of being arrested at the moment that they gain the knowledge that they need to commit the offense. But the city is not enforcing that in that manner. And it is the city's enforcement that has to cause the constitutional injury before the plaintiff can have a judgment of liability against the city. So the city... The plaintiffs would have to have alleged that. Let me go through this with you. The city has a policy of notifying registering offenders that their homes are no longer in compliance. The statute criminalizes knowingly, knowingly residing within 500 feet of a daycare. So without the city's policy, these men might not know that a neighbor a block away has obtained an in-home daycare, uh, license. Wouldn't that be enough to meet the Monell requirement of the city's, uh, policy causing harm? No, Your Honor, because that-that would just get them the final piece in the elements necessary to commit the offense. But the harm... There has to be that... The city's policy has to actually cause harm in the sense of constitutional violation, constitutional injury. That just gets them the last piece in having committed the crime. But that doesn't get them that the city's policy in providing a notice gives... actually causes the ex post facto violation or causes the taking. Those harms flow from the statute themselves. So the taking, if there is a taking, it's because they're, you know, they're challenging the law on its face. It's because the legislature enacted a law that prohibited them from residing and thereby took their property interest in residing within so many feet of these locations. If there's an ex post facto violation, constitutional violation, it's because the law is punishing... retroactively. It's not because the city gives them the knowledge that they need to have committed the offense. It's actually the offense that's, you know, the statute on the books that's causing those other constitutional injuries. That's the piece that's missing in their Monell argument. Right, but the city is... has enforcement authority to the extent of its police department making arrests for violation of the statute. Correct. So the city is an appropriate defendant in the sense of the claim for injunctive relief? No, Your Honor, and I'm happy that you raised that because that is in... under Los Angeles counties versus Humphreys, which this court recognized in its Snyder decision, it is no more appropriate to hold the city liable for a claim that requires an injunction than it is for holding the city liable for a claim that requires damages relief. In other words, it is not the nature of the relief that matters. It's whether there... to hold... to get a judgment against a municipality, there must be a municipal policy that's actually causing the constitutional violation. It doesn't matter what kind of relief you've requested. And Los Angeles County versus Humphreys squarely holds... the Supreme Court case squarely holds that an injunction is no more appropriate. And I would direct the court's attention to Snyder in which this court did discuss Los Angeles County versus Humphreys for that. So the state's attorney is the only enforcement authority for violations of state law? I can say that it's not the city as to which state official I will leave to the state. And injunction has to run against somebody. Right. And so I would leave that to the state but I would say it would be the state and not the city. It would not be the city because it's not our policy that's causing these alleged constitutional violations. I would also... Now, Mr. Patterson directed me to ask you a question, so I will. Okay. And that is if a person like Mr. Cardone is forced to sell his home at a loss in order to be in compliance is there a mechanism in state law that allows him to recover for that loss? Yes, Your Honor. In our brief we do cite to two state court cases. West Dundee versus First United Church and then Sorrells versus City of Maycomb. And those state court cases do suggest that there is an action that law would be appropriate to recover under the Illinois Constitution taking clauses which is broader than the U.S. Constitution taking clause for interference with property rights. It doesn't actually have to be a physical invasion of the right. It could just be preventing some sort of use. The West Dundee case allowed actually a counter claim to go forward and the allegation in that case was that the municipality hadn't issued a demolition permit or a building permit or some sort of... So there are definitely there's a state forum. Your response is that they have to bring another case. That the constitutional prohibition on takings doesn't prevent the taking itself. It just requires that there be just compensation paid. And so if there's a mechanism in state law for them to recover that compensation then they can go to state court and obtain that in state court. Well you just said if. Is there one? Yes, your honor. They can bring a claim under the Illinois Constitution or an inverse commendation claim in Illinois state court. And I would direct the court's attention to the village of West Dundee and the Sorrell's decision that we cite in our brief. And then just briefly I see my time is almost up but on the ex post facto clause on the merits although the city is not really at issue here because it's the state. I would just point out that there is at least one element of this offense that is occurring after the enactment of the statute and therefore it is not an ex post facto problem under this court's analysis in Leach and I would also direct the court's analysis to this to the Dixon case from this circuit as well that it's a new criminal law and one element like a felon in possession statute may have occurred preceding the enactment but it's the effective date of the ex post facto purposes. Not whether the daycare moves in first or you know the residence. So it's not an ex post facto problem either. For these reasons we respectfully ask this court to affirm the district court's judgment in favor of the city. Thank you. Thank you. Ms. Nicholas you've got five minutes left. Thank you judge. First with regard to the ex post facto claim in the argument that was just made by the city's council it is not the plaintiff's claim here that the criminal charges constitute a retroactive punishment. It's that the separate and apart from the prospect of criminal charges the burden imposed on the plaintiffs under this law constitutes a punishment. Meaning that the plaintiffs are presented with a choice move out of your home or face criminal charges. That in and of itself is what is retroactive about this statute. And there can be no question that the state and its enforcement authorities apply that retroactively to people whose crimes were committed long before the enactment. With regard Of course the defendants are saying that knowingly remaining in a home that is not in compliance is a new offense. It's not increased punishment for the old offense. That's their argument. Yes and it's the plaintiff's position here that facing that choice a lifetime of housing instability move out of your house or face felony prosecution. That in and of itself amounts to a punishment separate and apart from whether the plaintiffs are ever charged with a crime. Mr. Vasquez has already had to serve 25 years under this statute and he's now received a second notice that he must uproot his family and his 10 year old daughter or be charged with a felony offense. And it's the plaintiff's position here that that is such a severe burden that it amounts to a retroactive punishment. And we are simply seeking the opportunity to develop the factual record demonstrating that in the district court below. Which we have not been afforded an opportunity to do because this was dismissed on a 12B6 motion. Why does that need an evidentiary record? It's a legal question. Well there are we seek the opportunity to develop evidence concerning the burden this imposes on the plaintiffs and other people who are subject to this statute. And also to hear why the state believes it is necessary to apply this statute so broadly to such a heterogeneous group of some of whom are like the plaintiffs and who have never had physical contact of an inappropriate nature with a child and who have lived in the community for more than a decade without committing another offense. Well right, that's the inquiry but why is that an evidentiary inquiry as opposed to a legal question? It's a legal test for the constitutional right to be free from an ex post facto law. And the district court here erred in dismissing that claim on a 12B6 motion. With regard to the arguments about the proper scope of liability and who ought to be held liable here, it's really an agency question. And the city here may have a point that they didn't engage in the type of municipal policy making that makes it appropriate to impose liability on them for damages claim. However, the city should really be seen as acting as an agent of the state. The state of Illinois has empowered the city of Chicago and other municipal police departments as its enforcement arm. The people who enforce this unconstitutional policy are not the state police, not the governor, not the attorney general, but it's local police departments like the city of Chicago and it's state attorney's offices like the defendants herein. And the state attorney are wearing state hats here, not acting in their capacity as municipal enforcement authorities. I also want to draw the court's attention to something that was stated by Fox's attorney, which is that this case should be seen, the ex post facto claim should be seen as similar to the 2003 decision in Smith v. Doe. That case is clearly inapposite. That only required that someone list truthful information about a past conviction on a publicly available registry. And the court there held that that was not an ex post facto enactment because it did not amount to a punishment. Here this statute bears almost no resemblance to that first generation registry. This statute affects plaintiffs' lives, their housing, their stability for the rest of their lives. Subjects them to a lifetime of continual punishment. So it's a very distinguishable case. And I would just close by saying that politicians in Illinois and elsewhere are under a lot of pressure to pass ever more restrictive laws regulating this population of people. And we have to come to the federal courts for some judicial review of that. And so we ask that you reverse the decision of the district court and allow plaintiffs to proceed on their constitutional claims. Thank you. Thanks to all counsel. The case is taken under advisement.